Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 2328 | **DATE** | 10/28/2004 |
| **CASE TITLE** | State Street Bank & Trust Co. vs. UAL Corp. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   For the reasons stated in the attached memorandum opinion and order, the order of the bankruptcy court enjoinig State Street Bank from transferring shares of United stock held by the ESOP is affirmed. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | OCT 29 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 24 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| MF | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| STATE STREET BANK AND TRUST COMPANY, | )<br>)<br>) |
| Appellant, | )<br>) |
| | ) Case No. 03 C 2328 |
| v. | )<br>) |
| | ) Honorable John W. Darrah |
| UAL CORPORATION, | )<br>) |
| Appellee. | ) |

DOCKETED
OCT 29 2004

## MEMORANDUM OPINION AND ORDER

United Airlines and certain of its affiliates (collectively "United") filed voluntary petitions under Chapter 11 of Title 11 of the United States Code. State Street Bank and Trust Company ("State Street") is the trustee of United's Employee Stock Ownership Plan ("ESOP"). Presently before the Court is the appeal of an order of the bankruptcy court by State Street, enjoining State Street from transferring shares of United stock held by the ESOP. For the reasons that follow, the decision of the Bankruptcy Court is affirmed.

## LEGAL STANDARD

On an appeal, a bankruptcy court's factual findings, such as the credibility of witnesses, and applications of legal standards to a particular set of facts are reviewed for clear error; while questions of law are reviewed *de novo*. Fed. R. Bankr. P. 8013; *Hoseman v. Weinschneider*, 322 F.3d 468, 473 (7th Cir. 2003); *McFarlane v. Life Ins. Co. of Am.*, 999 F.2d 266, 267 (7th Cir. 1993). "A finding is clearly erroneous when although there is enough evidence to support it, the reviewing court [based] on the entire evidence is left with the definite and firm conviction that a mistake has been committed . . . If the bankruptcy court's account of the evidence is plausible, a

reviewing court may not reverse even if it would have weighed the evidence differently as trier of fact." *Key Plaza I, Inc. v. Kmart Corp.*, No. 02 C 4086, 2003 WL 115240, at * 3 (N.D. Ill. Jan. 13, 2003) (citation omitted).

The decision to grant an injunction is reviewed pursuant to an abuse of discretion standard. *E.g., Vencor, Inc. v. Webb*, 33 F.3d 840, 844 (7th Cir. 1994) (*Vencor*). A bankruptcy "court abuses its discretion when it commits a clear error of fact or an error of law." *Vencor*, 33 F.3d at 844. Absent any error, a bankruptcy court's weighing of factors is entitled to deference; and, although the inquiry is more searching than whether the bankruptcy court applied those factors irrationally, a reviewing court may not substitute its judgment for that of the bankruptcy court's judgment. *Vencor*, 33 F.3d at 844.

## BACKGROUND

After United filed for bankruptcy, State Street announced its intent to sell all shares held by the ESOP. United then moved to enjoin State Street from selling any shares held by the ESOP, pursuant to 11 U.S.C. §§ 105(a), 362(a)(3), and 541, because the sale of those shares by State Street would cause United's bankruptcy estate to lose a multi-billion dollar "net operating loss" ("NOL") tax benefit asset under then-applicable Internal Revenue Service regulations.

Under the Internal Revenue Code, NOLs that accumulate before the completion of the bankruptcy reorganization may be used to offset future taxable income. *See* 26 U.S.C. § 382. However, under § 382 of the Tax Code, United would have lost the NOLs if an "ownership change" occurred prior to completion of the bankruptcy reorganization. *See* 26 U.S.C. § 382.

2

Because, at times, the ESOP trust held more than 50 percent of United's stock, United feared that the sale of the stock by State Street would trigger an "ownership change," as defined in the Code, thus causing United to lose the NOLs.

The bankruptcy court determined that an adversarial proceeding was necessary to determine whether to enjoin State Street from selling the relevant shares of United stock. The bankruptcy court held two evidentiary hearings to determine whether State Street should be enjoined from selling the stock held by the ESOP. At the first evidentiary hearing, both United and State Street presented evidence.

United presented evidence from one witness who testified concerning the value of the NOLs, United's expected return to profitability, and the contemplated use of the NOLs in United's business plan – specifically, that United would return to profitability after the reorganization and that it would accumulate a total of approximately $5.22 billion in NOLs for future use. United also presented evidence that it would use the NOLs as part of its business plan over the next three years and that United would take steps to protect the NOLs from being lost under the Tax Code.

State Street also presented evidence from two witnesses who testified that, absent the trading suspension injunction, it would receive approximately $48 million by selling the shares of United stock. State Street also presented evidence that United's stock would become virtually worthless by the time it emerged from bankruptcy. After this hearing, State Street sold additional shares with the consent of United, and the value of the shares then held by the ESOP was worth approximately $20 million.

At the conclusion of the evidentiary hearing, the bankruptcy court found that the NOLs were a significant asset in United's reorganization and that State Street would not suffer irreparable harm if it was temporarily enjoined from selling the stock. Therefore, the bankruptcy court temporarily enjoined State Street from selling the stock and ordered a second evidentiary hearing for United to present further proofs regarding the potential value of the NOLs in its reorganization plan.

At the second evidentiary hearing,[1] United elicited testimony from two witnesses regarding the existence, value, and anticipated use of its NOLs of approximately $5.9 billion. Based on a number of assumptions and forecasts, United's evidence showed the tax effect of the NOLs, using the thirty-five percent corporate tax rate, ranged from $800 million to $1.1 billion. United intended to use these NOLs over the course of 2004, 2005, and 2006; therefore, it would take the necessary steps to protect this asset. United also presented evidence regarding its future prospects for profitability. Upon its emergence from bankruptcy, United could generate over $15 billion per year in revenue and accumulate pre-tax profits in excess of $1 billion per year. This evidence was not contradicted. State Street did not present any witnesses at the second hearing.

Based on this evidence, the bankruptcy court granted an injunction which prevented State Street from selling the shares of stock in the ESOP. The bankruptcy court held:

---

[1] Initially, multiple parties raised objections to the entry of a trading suspension injunction. However, prior to the second evidentiary hearing, all parties, except State Street, withdrew their objections and agreed that the trading suspension injunction should be entered to preserve the NOLs.

> [T]he evidence today is uncontradicted that the retention of the net operating losses as an element of a successful reorganization may be of very substantial significance. . . . This net operating loss with the potential for shielding very substantial amounts of future income, if it is retained as a valuable asset at the time of reorganization, certainly could have major impact on the attractiveness of the reorganized entity in the financial markets and its potential profitability after taxes.

(Tr. of Feb. 21, 2003, at 270-71).

The bankruptcy court found that protecting the NOLs outweighed any harm from the potential loss to the ESOP from enjoining the trading of the stock. Therefore, the balance of harms favored United.

The bankruptcy court also noted that United was attempting to obtain a ruling from the IRS which would permit State Street to sell the shares in the ESOP without causing an ownership change under 26 U.S.C. § 382 and the loss of the NOLs. Once United obtained this ruling, State Street would be permitted to sell the shares in the ESOP.

The terms of this injunction provided that it would apply until United reorganized. The injunction also provided that it was issued under the authority of 11 U.S.C. §§ 105(a), 362(a)(3) and 541. Finally, the injunction order provided that it superceded all other orders issued by the bankruptcy court concerning the same subject matter.

## ANALYSIS

The appeal raises three issues: (1) whether the bankruptcy judge had the judicial power to enjoin State Street from selling, in the exercise of its fiduciary duties as trustee and investment manager for the United Corporation ESOP, common stock of United held in the ESOP trust; (2) if the bankruptcy judge had the requisite judicial power, whether United met its burden of establishing the evidentiary basis required for the issuance of such an injunction; and

(3) considering the absence of payment of the market value of the stock held by the ESOP or of any other adequate protection of the ESOP participants, whether the issuance of such an injunction constituted a taking of private property for a non-public purpose without just compensation, in violation of the Fifth Amendment to the Constitution.

*The Bankruptcy Court's Authority to Issue the Trading Suspension Injunction*

State Street first contends that the bankruptcy court did not have the judicial power to enjoin State Street from selling the UAL stock, in the exercise of its fiduciary duties as trustee and investment manager for the United Corporation ESOP. Specifically, State Street argues that: (1) the stock is not property of the bankruptcy estate and thus is not subject to the automatic stay in 11 U.S.C. § 362; (2) if the bankruptcy court had jurisdiction over the matter, it did not have power to issue the injunction pursuant to 11 U.S.C. § 105(a); and (3) the injunction frustrates the operation and objectives of the bankruptcy and tax codes.

State Street bases its argument that § 362 is not applicable on a statement by the bankruptcy court that the automatic stay of 11 U.S.C. § 362, by its terms, did not prohibit sales of United claims or stock. However, this statement was made in the context of determining the proper adjudicative method to decide if an injunction should issue, i.e., whether to issue the injunction pursuant to the automatic stay or conduct an adversarial proceeding. The injunction, which later issued, provided that it supercedes all other orders issued by the bankruptcy court and provided that it is based on the automatic stay provisions of § 362.

Other courts have issued similar injunctions pursuant to § 362. *In re Prudential Lines Inc.*, 928 F.2d 565, 573-74 (2d. Cir. 1991); *In re 48th Street Steakhouse, Inc.*, 835 F.2d 427, 431 (2d. Cir. 1987). Those cases have found that where the non-debtor's interest is inextricably

6

linked with a bankruptcy estate's rights in property, the automatic stay bars any action which could diminish the property. *E.g., In re Prudential Lines Inc.*, 928 F.2d at 574. Similarily, State Street's interest in United stock is inextricably linked with the bankruptcy estate's rights to the NOLs. Accordingly, the automatic stay provisions provided the bankruptcy court the power to enjoin State Street from selling the shares of stock held by the ESOP pursuant to § 362.

State Street argues that 11 U.S.C. § 105, by itself, does not authorize bankruptcy courts to create substantive rights and issue injunctions. *See, e.g., In re Oxford Mgmt., Inc.*, 4 F.3d 1329, 1333-34 (5th Cir. 1993); *In re Chicago, Milwaukee, St. Paul, and Pac. R.R. Co.*, 791 F.2d 524, 528 (7th Cir. 1986). United contends that even if the injunction was not proper under the automatic stay provision, the injunction would still be valid under § 105.

The injunction order also provided it was issued pursuant to § 105. Section 105(a) permits bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code] and "grant[s] comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate." *Celotex Corp. v. Edwards*, 514 U.S. 305, 308 (1995) (citation omitted) (*Celotex*). The jurisdiction and power of a bankruptcy court extends broadly in reorganizations under Chapter 11. *See Celotex*, 514 U.S. at 310, 312; *cf. Bernard-Zozal Group, Inc. v. Cox*, 23 F.3d 159, 162 (7th Cir. 1994) (stating that § 105 complements the automatic stay provision by permitting the bankruptcy court to issue orders to carry out the provisions of the Bankruptcy Code).

In *Celotex*, the Supreme Court found that "Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all

7

matters connected with the bankruptcy estate and that the 'related to' language of § 1334(b) must be read to give district courts (and bankruptcy courts under § 157(a)) jurisdiction over more than simple proceedings involving the property of the debtor or the estate." *Celotex*, 514 U.S. at 308 (citations omitted). While State Street contends this decision addressed the jurisdiction – and not the power – of a court to issue an injunction, the Supreme Court's holding also upheld the validity of an injunction. *See Celotex*, 514 U.S. at 312.

Other courts have also held that § 105(a) authorized bankruptcy courts to enjoin actions that could adversely affect NOLs. The Second Circuit explained that § 105 "has been liberally construed to enjoin [actions] that might impede the reorganization process," *In re Prudential Lines Inc.*, 928 F.2d at 574 (citation omitted) (alteration in original); and, therefore, § 105 provided the bankruptcy court with the power to enter an injunction similar to the injunction entered in this case.

Accordingly, the bankruptcy court's order, pursuant to § 105, was a valid exercise of the court's power to protect the bankruptcy estate from losing the assets represented by the NOLs. *In re Prudential Lines Inc.*, 928 F.2d at 574.

Contrary to State Street's objection, the trading suspension injunction does not frustrate the operation and objectives of the bankruptcy and tax codes. The injunction contributes to rehabilitating the debtor and confirming a plan of reorganization, which are the goals of a chapter 11 proceeding, and preserves the property of the estate and increases its value, thereby making an effective reorganization more probable. The trading suspension injunction also permits United to benefit from specific provisions in the Tax Code applicable only to companies in bankruptcy,

26 U.S.C. § 382(l)(5)-(6); and thereby gives full effect to 11 U.S.C. § 346(h), which permits a bankrupt company to preserve its NOLs for future use in offsetting taxable income.

*The Merits of the Trading Suspension Injunction*

State Street contends that the bankruptcy court erred in determining that United met its burden of establishing the evidentiary basis required for the issuance of the injunction – specifically, that: (1) the trading suspension injunction was a permanent injunction and not a preliminary injunction; (2) United did not demonstrate a reasonable likelihood of consummating a Chapter 11 plan that would preserve the NOLs; (3) United did not demonstrate a reasonable likelihood of future profits; (4) United failed to demonstrate irreparable harm; (5) the balance of harms favors State Street; (6) the trading suspension injunction harms the public interest.

Whether an injunction is labeled "preliminary" is not dispositive in determining whether the injunction is preliminary or permanent; but, rather, it must be determined whether the injunction "winds up the case except for some details." *See In re James Wilson Assocs.*, 965 F.2d 160, 166 (7th Cir. 1992); *In re Brennan*, 198 B.R. 445, 448 (D.N.J. 1996) (citations omitted). State Street contends that the injunction was permanent because it effectively blocked any sale of the ESOP trust stock for all time. However, the trading suspension injunction order by its express terms provides that it will no longer be in effect after United reorganizes.

State Street argued before the bankruptcy court that United had not demonstrated a likelihood of success on the merits. Therefore, the trading suspension injunction was a preliminary injunction.

United has met its evidentiary burden in obtaining the preliminary injunction. Four factors are considered to determine whether to grant a preliminary injunction: (1) the movant

must demonstrate a likelihood of success on the merits; (2) the movant will be irreparably harmed if the injunction does not enter; (3) the threatened injury to the movant if the injunction does not enter must outweigh the threatened injury to the non-movant if the injunction enters; and (4) whether the granting of the injunction is in the public interest. *E.g., Plummer v. Am. Inst. of Certified Public Accountants*, 97 F.3d 220, 229 (7th Cir. 1996).

To prove a likelihood of success on the merits, United must prove that it has viable NOLs and that State Street's sale of the remaining United stock by the ESOP would cause the bankruptcy estate to lose the NOLs. The bankruptcy court was not clearly erroneous in determining that United has met this evidentiary burden.[2]

State Street further argues for United to prove a likelihood of success on the merits, United must demonstrate a reasonable likelihood of future profits because, without profitability after reorganization, the NOLs would have no value in offsetting taxable income. State Street claims the financial forecasts used by United to demonstrate its potential for profitability after reorganization were based on untenable assumptions, and United offered no other relevant testimony.

However, the bankruptcy court determined that the NOLs could be used to offset substantial amounts of future income made by United. This conclusion necessarily assumes that

---

[2] If the trading suspension injunction was a permanent injunction, United must actually succeed on the merits. *E.g., Collins v. Hamilton*, 349 F.3d 371, 374 (7th Cir. 2003). State Street argues that to succeed on the merits, United must prove a reasonable likelihood of consummating a Chapter 11 plan that would preserve the NOLs. (Appellant's Br. at 28). However, it would have been practically impossible for United to prove such a requirement because the trading suspension injunction issue arose relatively early in a large and complex reorganization proceeding. *See In re Chicago, Rock Island, & Pac. R.R. Co.*, 545 F.2d 1087, 1090-91 (7th Cir. 1976).

United had shown it would be profitable. United presented evidence that it could generate over $15 billion per year in revenue and accumulate pre-tax profits in excess of $1 billion per year after reorganization. The bankruptcy court found United's evidence persuasive. After reviewing the evidence in its entirety, it cannot be said that the factual findings made by the bankruptcy court were clearly erroneous. Accordingly, United has demonstrated a likelihood of success on the merits by presenting a reasonable likelihood of future profits.

United also demonstrated that it would be irreparably harmed if the trading suspension injunction did not issue. State Street argues to the contrary because United failed to demonstrate both a reasonable likelihood of consummating a Chapter 11 plan that would preserve the NOLs and a reasonable likelihood of future profits. As discussed above, United sufficiently made the requisite showing. Therefore, the bankruptcy court's finding that United would be irreparably harmed if the trading suspension injunction did not issue cannot be said to be clearly erroneous.

State Street further contends that the threatened injury to United does not outweigh the threatened injury to State Street if an injunction were not granted. The bankruptcy court, though, specifically found that United could lose its $800 million to $1.1 billion in NOLs if State Street was permitted to sell the shares of stock held by the ESOP. The bankruptcy court also found that the ESOP would lose approximately $20 million if they could not sell the shares. These findings were not clearly erroneous. Nor was it clearly erroneous or an abuse of discretion, based on these findings, for the bankruptcy court to conclude that United would suffer more harm if the trading suspension injunction was not granted than the ESOP would suffer if the trading suspension injunction was granted.

State Street, though, argues that it must receive either adequate protection from the

injunction or suffer only minimal harm as a result of the injunction. *MacArthur Co. v. John-Manville Corp.*, 837 F.2d 89, 94 (2d. Cir. 1988); *In re Otero Mills, Inc.*, 21 B.R. 777, 779 (Bankr. D.N.M. 1982). According to State Street, the value of stock contained in the ESOP would have become virtually worthless after United reorganizes and the trading suspension injunction is not in force, and the shares held in the ESOP would suffer a $20 million loss.

The bankruptcy court, though, did not err in determining that State Street was not entitled to adequate protection. Although State Street presented evidence that United's stock would become virtually worthless by the time it emerged from bankruptcy, the bankruptcy court was entitled to discount this evidence. Instead, the bankruptcy court determined, based on other evidence, that the market would set the value of the stock; the value of the stock could rise, and State Street would be adequately protected. This finding was not clearly erroneous.[3]

State Street next contends that the trading suspension order harms the public interest because it does not treat similarly situated parties equally, it interferes with the normal operation of the Tax Code by giving United an advantage over its competitors, and frustrates State Street's performance of its statutory duties as fiduciary. To the contrary, the injunction serves the public interest because financial markets require confidence that United will be able to reorganize with a maximum value, and the public benefits from the successful reorganization of a large and competitive airline. The injunction specifically enables United to claim a right created in the IRS code for a bankrupt entity, as discussed above.

---

[3]The IRS subsequently passed a regulation permitting a qualified trust to distribute the assets in the trust to the actual owners of the stock without causing an ownership change. 26 C.F.R. § 1.382-10T. This regulation enabled State Street to dispose of the shares in the ESOP at the prevailing market price without causing United to lose its NOLs.

12

The evidence in its entirety does not reflect that the bankruptcy court's ruling is contrary to the public interest, nor has State Street made any specific showing that the bankruptcy court's ruling was an abuse of discretion in this regard.

Based on the above, United has met its burden of proving the merits of its claim; and the bankruptcy court did not abuse its discretion in enjoining the sale of the ESOP stock based on the relative weight of the relevant factors.

*Whether the Injunction Was a Taking Without Just Compensation*

State Street contends that given the circumstances of the case, the issuance of the trading suspension injunction constituted a taking of private property for a non-public purpose without just compensation, in violation of the Fifth Amendment to the Constitution. Two types of takings exist: physical takings and regulatory takings. *Brown v. Legal Found. of Washington*, 538 U.S. 216, 233 (2003) (citation omitted) (*Brown*).

Physical takings occur when the government physically takes possession of an interest in property for a public purpose. *Brown*, 538 U.S. at 233 (quotation omitted). In this situation, the government is required to compensate the former owner. *Brown*, 538 U.S. at 233 (quotation omitted). In contrast, a regulatory taking occurs when government regulations limit the property's owners from taking certain actions with respect to that property. *See Brown*, 538 U.S. at 233-34. Where the government action is the result of a regulation, there is no categorical duty to compensate. *See Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 322-25 (2002).

Here, the alleged taking is a regulatory taking and not a physical taking. State Street concedes as much in its brief: "the value of the stock in the ESOP trust is being sacrificed for the **sole benefit of the reorganized [United] Corporation**" (emphasis added). Therefore, the alleged taking is not being used for a public purpose; and it cannot be considered a physical taking.

To determine whether a regulatory taking has occurred, a court must make "an ad hoc factual inquiry into the particular circumstances of the case, attaching particular significance to three factors: (1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action." *E.g., Davon, Inc. v. Shalala*, 75 F.3d 1114, 1127 (7th Cir. 1996) (internal quotations and citation omitted).

State Street first argues that the economic impact of the trading suspension injunction was devastating because it completely destroyed the value of the remaining stock held in the ESOP when State Street was prevented from selling the stock. However, "the denial of one traditional property right does not always amount to a taking." *Andrus v. Allard*, 444 U.S. 51, 65 (1979). In this case, State Street still retained possession of the stock in the ESOP and was only delayed from exercising its right to sell the shares. Because State Street retained possession of the stock, it was later able to dispose of the stock when the IRS passed a regulation permitting a qualified trust to distribute the assets in the trust to the actual owners of the stock without causing an ownership change.

State Street next asserts the trading suspension injunction frustrates distinct investment-backed expectations that underlay the creating of the ESOP and appointment of State Street as

14

investment manager. According to State Street, ESOP participants expect that they will be able to sell their shares on the open market just like other stockholders. However, investing in stocks involves inherent risk. Regulations exist on who can purchase and sell shares over the stock market, and an insolvent corporation attempting to reorganize under the Bankruptcy Code may further limit the ability of investors to sell shares while companies are in bankruptcy. Therefore, those who invest in stocks should reasonably expect that their ability to sell those stocks may be temporarily limited by governmental action.

The bankruptcy court acted within its powers to temporarily delay State Street and the ESOP participants from disposing the shares. The injunction issued as the result of an adversarial process, including two evidentiary hearings. The resulting injunction cannot be said to be of the character which supports a finding that a taking occurred.

Based on the above, the trading suspension injunction did not constitute a regulatory taking; and State Street and the ESOP participants are not entitled to just compensation.

## CONCLUSION

For the foregoing reasons, the order of the bankruptcy court enjoining State Street from transferring shares of United stock held by the ESOP is affirmed.

Date: October 28, 2004

John W. Darrah, Judge
United States District Court

15